UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LEON K. MITCHELL, JR.

                        Plaintiff,

          v.

CAROLYN W. COLVIN, [1] Commissioner of
 Social Security,

                     Defendant.

_____

**REPORT
and
RECOMMENDATION**

**14-CV-11V(F)**

APPEARANCES:        LAW OFFICES OF LEWIS L. SCHWARTZ, PLLC
                           Attorneys for Plaintiff
                           LEWIS L. SCHWARTZ, of Counsel
                           1231 Delaware Avenue, Suite 103
                           Buffalo, New York 14209

                           WILLIAM J. HOCHUL, JR.
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           MONIKA K. CRAWFORD
                           Assistant United States Attorney, of Counsel
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York 14202, and

                           ESTHER KIM
                           Assistant Regional Counsel
                           United States Social Security Administration
                           Office of the General Counsel, of Counsel
                           26 Federal Plaza
                           Room 3904
                           New York, New York 10278

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on June 4, 2014.[1] (Doc. No. 9).  The matter is presently before the court on motions for judgment on the pleadings, filed on June 3, 2014, by Plaintiff (Doc. No. 8), and on September 18, 2014, by Defendant (Doc. No. 12).

## BACKGROUND

Plaintiff Leon Mitchell, Jr., ("Plaintiff" or "Mitchell"), seeks review of Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability benefits") under, Title XVI of the Social Security Act ("the Act").  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of obesity, back disorder, moderate obstructive lung disease, adjustment disorder with mixed disturbance of emotions and conduct and cocaine abuse and cannabis abuse in remission (R. 49), but does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 50).[2]  Defendant further determined that Plaintiff had the residual functional capacity to perform sedentary work with limitations in the ability to perform simple, repetitive work involving superficial interaction with peers and no interaction with the general public, no work around dangerous equipment or hazardous conditions, or work that involves frequent bending or twisting. (R. 51).  As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged

---

[1] Hon. Richard J. Arcara reassigned the case to Hon. Lawrence J. Vilardo on November 23, 2015.
[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

onset date through the date of the Administrative Law Judge's decision on June 1,

2012.

## PROCEDURAL HISTORY

Plaintiff filed his application for disability benefits on June 17, 2009[2] (R. 283).

Plaintiff's  application was initially denied by Defendant on December 28, 2009, and,

pursuant to Plaintiff's request filed February 2, 2010 (R. 175), a hearing was held before

Administrative Law Judge Marilyn D. Zahm ("Zahm" or "the ALJ"), on April 11, 2011, in

Buffalo, New York.  (R. 75-133).  Plaintiff, represented by Lewis L. Schwartz, Esq.

("Schwartz"), appeared and testified at the hearing.  (R. 77-133 ).  Vocational Expert

Victor Alberigi ("Alberigi" or "the VE") also testified at the hearing.  (R. 129-33).  A

supplemental hearing was held on August 15, 2011, where F.J. Montegut, M.D. ("Dr.

Montegut"), a board certified thoracic and vascular surgeon, appeared and testified.  (R.

136-58).  The ALJ's decision denying the claim was rendered on June 1, 2012.  (R. 47-

62).

Plaintiff requested review by the Appeals Council, and the ALJ's decision

became Defendant's final decision when the Appeals Council denied Plaintiff's request

for review on November 14, 2013.  (R. 1-5).  This action followed on January 3, 2014,

with Plaintiff alleging that the ALJ erred by failing to find him disabled.  (Doc. No. 1).

On June 3, 2014, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's

motion"), accompanied by a memorandum of law (Doc. No. 8) ("Plaintiff's

---

[2] Previous to the filing of the action in this case, on August 14, 2006, Plaintiff submitted an application for
Title XVI Supplemental Security income benefits, denied by the ALJ on February 4, 2009, with Appeals
Council review denied on May 9, 2009.  That application is not relevant to the issues presented here.

Memorandum"). Defendant filed, on September 18, 2014, Defendant's cross motion for judgment on the pleadings[3] ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 12) ("Defendant's Memorandum"). On October 23, 2014, Plaintiff filed Plaintiff's Reply Memorandum of Law (Doc. No. 15) ("Defendant's Reply"). Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion should be DENIED.

## FACTS[4]

Plaintiff, Leon K. Mitchell, ("Mitchell" or "Plaintiff"), was born on December 8, 1975, lives alone, and completed high school and one year of college. (R. 87). Plaintiff alleges that he is not able to work because he suffers nerve damage of his hands and feet, back pain, headaches, and right knee pain as a result of a car accident Plaintiff was in in 2006. (R. 96-99).

Relevant to the period of disability under review in this case, on February 13, 2009, Plaintiff visited Patrick Siaw, M.D. ("Dr. Siaw"), at Sisters of Charity Health Center ("Sisters Health Center") in Buffalo, New York, for a follow-up examination to Plaintiff's hospitalization for antiphospholipid syndrome[5] and lupus anticoagulants[6]. Dr. Siaw noted that Plaintiff exhibited limited range of motion ("ROM") of his back, had a history of deep vein thrombosis ("DVT"), and weighed 333 pounds.

---

[3] The Secretary did not file an answer in this action, but did file a copy of the administrative record. Both parties refer to the administrative record in their memoranda. Therefore, the undersigned construes the complaint to incorporate the administrative record for purposes of the instant motion.
[4] Taken from the pleadings and the administrative record.
[5] Antiphospholipid syndrome is an immune system disorder that mistakenly attacks normal blood protein and causes formation of blood clots in the veins and arteries.
[6] Lupus anticoagulants are antibodies against substances that prevent clotting of blood cells.

On April 3, 2009, Plaintiff returned to Dr. Siaw who noted that Plaintiff exhibited no edema (swelling) of Plaintiff's extremities, and refilled Plaintiff's prescription for Coumadin (blood thinner). (R. 607).

On July 8, 2009, Gary Wang, M.D. ("Dr. Wang"), completed a nerve conduction study and electromyography ("EMG") test on Plaintiff. (R. 596-603). Dr. Wang opined that Plaintiff's EMG revealed no evidence of peripheral sensory neuropathy (nerve disorder), or evidence of lumbrosacral radiculopathy (nerve root pain), and recommended that Plaintiff's physicians discontinue Plaintiff's narcotic pain medications as there was no evidence to indicate severe painful neuropathy. (R. 596).

On July 16, 2009 Dr. Siaw completed a functional capacity questionnaire, and noted that he had provided treatment for Plaintiff every three weeks since February 13, 2009 (R. 604), and opined that Plaintiff could stand and walk less than two hours in an eight-hour workday, and sit for up to eight hours in an eight-hour day. (R. 604). Dr. Siaw opined that Plaintiff could never stoop or crouch, that Plaintiff's pain was severe enough to interfere with Plaintiff's attention and concentration, and that Plaintiff was completely disabled. (R. 604).

On September 21, 2009, Robert Hill PhD., ("Dr. Hill"), completed a consultative psychological evaluation on Plaintiff who reported no previous hospitalizations, and no mental health treatment, but reported symptoms of depression, anxiety, and panic attacks. (R. 629-30). Plaintiff reported activities of daily living that included simple cleaning, shopping with assistance, watching television, listening to the radio, socializing with family members, and occasional reading. (R. 633). Dr. Hill noted that Plaintiff's mental status examination was normal with the exception of dysphoric mood

and affect, and mildly impaired memory due to anxiety and nervousness in the evaluative setting. (R. 632). Dr. Hill opined that Plaintiff was able to make appropriate decisions, but may have trouble relating to others, and that Plaintiff's insight and judgment appeared questionable. (R. 633). That same day, Nikita Dave, M.D. ("Dr. Dave"), completed a consultative internal medical examination on Plaintiff who reported taking Coumadin, Lisinopril (blood pressure), and hydrocodone (pain). (R. 636). Plaintiff reported daily bathing and cleaning, and cooking two to three times each week, and that his pain rated seven of ten on a ten-point scale. Dr. Dave noted that Plaintiff's gait was unremarkable other than flat feet, that Plaintiff required no assistance getting on and off of the examination table, that Plaintiff was able to squat halfway to the floor, walk on his heels and toes with some distress, and was able to rise from a chair without difficulty. (R 636). Upon examination, Plaintiff had limited ROM of the lumbar spine with tenderness, full ROM of the hips, knees, and ankles with no swelling or edema, and full overall strength with multiple points of give-way weakness. Plaintiff's deep tendon reflexes were equal in both upper and lower extremities with no motor or sensory deficits, in-tact hand and finger dexterity, full grip strength bilaterally. An X-ray of Plaintiff's lumbrosacral spine completed the same day was normal. (R. 640). Dr. Dave opined that Plaintiff had lifelong anticoagulant precautions, and should avoid working around heavy, sharp, dangerous equipment and machinery, should avoid heights and ladders, and had moderate to severe limitations for repetitive bending and twisting through the lumbar spine, prolonged standing, walking, lifting, carrying, pushing and pulling of more than moderately heavy objects, and had moderate limitations to repetitive squatting, kneeling, crouching, and prolonged sitting. (R. 638-39).

5

During follow-up examinations with Dr. Siaw on September 17, 2009, and December 2, 2009, Plaintiff reported continued foot pain. Dr. Siaw noted that Plaintiff's examination revealed no edema. (R. 725).

On November 9, 2009, J. Dale, a reviewing physician with the Social Security Administration, reviewed the evidence on record, and opined that Plaintiff was unable to lift ten pounds, stand or walk for two hours, or sit for six hours in an eight-hour workday. (R. 647).

On November 29, 2009, George Trimble, M.D. ("Dr. Trimble"), reviewed the medical evidence on record, and opined that he disagreed with the external limitations found by Dr. Dale on November 9, 2009. (R. 660-61). Dr. Trimble noted that the medical evidence supported a sedentary level of work, with lifting and carrying up to ten pounds, standing and walking at least two hours in an eight-hour workday and sitting six hours, that Plaintiff should never climb and could occasionally perform postural maneuvers should avoid concentrated exposure to vibration and hazards, and that Plaintiff's complaints of pain and malaise were only partially credible. (R. 659). Paul Kessler, PhD., reviewed evidence on record that same day, and opined that Plaintiff would work more effectively in environments where interaction with peers was superficial and Plaintiff would not be required to interact with the general public. (R. 659).

On December 2, 2009, Dr. Siaw noted that Plaintiff was moderately limited in walking, very limited in standing, lifting and carrying, pulling and pushing, and bending, but that Plaintiff had no limitation to sitting, seeing, hearing, speaking, or using his

hands.  Dr. Siaw opined that although Plaintiff exhibited no mental limitations Plaintiff was totally and permanently disabled.  (R. 803-04).

On December 18, 2009, T. Andrews ("Dr. Andrews"), a state agency review psychologist, completed a psychiatric review technique form on Plaintiff, and opined that Plaintiff's impairments caused only mild limitation to Plaintiff's activities of daily living, moderate limitation to Plaintiff's ability to maintain social functioning, no limitation to Plaintiff's ability to maintaining concentration, persistence, or pace and no episodes of decompensation of extended duration, and moderate limitation to Plaintiff's ability to carry out detailed instructions, set realistic goals or make plans independently of others, but Plaintiff was not significantly impaired in any work related areas of mental function. (R. 679, 683-84).

On February 4, 2010, Plaintiff visited Mian Majeed, M.D. ("Dr. Majeed"), a physician with Northtown Medical Associates in Amherst, New York, who diagnosed Plaintiff with low back pain, status-post radiculopathy, morbid obesity, hypertension, DVT, status-post inferior vena cava filter (blood clots), and headaches.  (R. 778). Plaintiff returned to Dr. Majeed with reports of headaches on March 25, 2010 (R. 773), April 29, 2010 (R. 772), May 27, 2010 (R. 777), and on July 8, 2010, where Plaintiff also reported increased low back pain and exhibited no ankle edema.  (R. 770).  Plaintiff returned to Dr. Majeed on August 5, 2010, and reported improved headaches.  On October 8, 2010, Plaintiff visited Dr. Majeed with reports of chronic back pain and decreased ROM.  (R. 766).

On April 8, 2011, Plaintiff visited Buffalo General Hospital in Buffalo, New York, with reports of right foot pain with swelling and right arm pain that increased in intensity

with walking.  (R. 991-1000).  Upon examination, Sureesh Appasamy, M.D. ("Dr. Appasamy"), prescribed Neurontin for Plaintiff's pain, diagnosed Plaintiff with swelling to Plaintiff's right foot, erythema and tenderness, and noted that Plaintiff reported walking for three to four blocks at a time without the assistance of a walker.  *Id.*

On May 13, 2011, Dr. Siaw, in response to agency-submitted questions, noted that Plaintiff was diagnosed with chronic low back pain prior to being under Dr. Siaw's care, that Plaintiff was very limited in walking, standing, lifting, carrying, pushing, pulling, and climbing stairs, and moderately limited to sitting, with no limitation to Plaintiff's ability to seeing, hearing, speaking or using his hands, and that Plaintiff was totally disabled as a result of his car accident.  (R. 990).

On August 15, 2011, a supplemental hearing was held where Dr. Montegut testified that there was no evidence of DVT or pulmonary embolism since Plaintiff was first diagnosed and treated for DVT on August 2008, that no evidence supported that Plaintiff had any limitations after the DVT, and that people typically lead a full life after a DVT episode, and that Plaintiff was able to engage in sedentary and light work.  (R. 156).

On June 6, 2011, Plaintiff sought treatment from Sisters Hospital emergency room in Buffalo, New York, with shortness of breath upon walking, lightheadedness, and groin pain.  (R. 1019).  Upon administering venus (blood flow) Doppler ultrasound testing, Alberto Benedicto, M.D. ("Dr. Benedicto"), diagnosed Plaintiff with bilateral DVT. Richard Curran, M.D. ("Dr. Curran"), diagnosed Plaintiff with acute kidney failure, acute venus thrombosis (blood clot), hyposmolality (low electrolytes), hypertension, depressive disorder not elsewhere classified ("NEC"), anemia, chronic back pain,

tobacco use disorder, chest pain not elsewhere specified ("NOS"), and noted that Plaintiff was morbidly obese with a BMI measured at 45[7].  (R. 1004).

On October 5, 2011, Plaintiff sought treatment from Buffalo General Hospital emergency room with shortness of breath, where, upon receiving treatment, Plaintiff signed out from treatment against medical advice.  (R. 1542).

On October 25, 2011, Dr. Siaw, in response to interrogatories submitted by the ALJ, reported that Plaintiff's lumbar radiculopathy limited Plaintiff's ability to lifting, pushing, pulling, sitting and standing for more than one hour, and that Dr. Siaw had referred Plaintiff for pain management, but Plaintiff did not attend the sessions, and that Plaintiff's obesity worsened Plaintiff's back pain and shortness of breath, that Plaintiff's DVT was the cause of Plaintiff's shortness of breath, and that Plaintiff had not complained of headaches.  (R. 1510-11).

On November 23, 2011, Plaintiff visited Sisters Hospital with leg pain (R. 1570-81).  Plaintiff returned to Sisters Hospital on March 12, 2012, with right arm pain and swelling, where a Doppler ultrasound was negative for right arm DVT.  (R. 1572). Plaintiff returned to Sisters Hospital on July 12, 2012, where a chest X-ray revealed no acute cardiopulmonary process.  (R. 1574-77).  A computerized tomography scan ("CT"), of Plaintiff's chest was normal.  *Id.*

On March 29, 2012, Dr. Siaw completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form

---

[7] BMI is the established medical criteria for obesity, which is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). *See* Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *2 (S.S.A. Sept. 12, 2002).  A person with a BMI of 25-29.9 is considered overweight. A person with a BMI above 30.0 is considered obese.  *See* http://www.cdc.gov/healthyweight/assessingbmi/adult_bmi/index/index.htm.html#Interpreted

on behalf of the Social Security Administration, and opined that Plaintiff had no

limitations to Plaintiff's mental functioning (R. 1522), was moderately limited in his ability

to sit, and very limited to his ability to walking, standing, lifting, carrying, pushing,

pulling, and climbing stairs, and that Plaintiff was totally disabled as a result of his

limitations.  *Id.*

## DISCUSSION

### 1.   Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.      **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion."  *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.  *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

## B.    <u>Substantial Gainful Activity</u>

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.
20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not
engaged in substantial gainful activity since June 17, 2009, the date of Plaintiff's alleged
onset of disability.  (R. 49).  Plaintiff does not contest this determination.

## C.    <u>Severe Physical or Mental Impairment</u>

The second step of the analysis requires a determination whether Plaintiff had a
severe medically determinable physical or mental impairment that meets the duration
requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do
"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes
necessary to do most jobs," and includes physical functions like walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing,
hearing, and speaking; understanding, carrying out, and remembering simple
instructions; use of judgment; responding appropriately to supervision, co-workers and
usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§
404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairments of
obesity, back disorder, moderate obstructive lung disease, adjustment disorder with
mixed disturbance of emotions and conduct, and cocaine and cannabis abuse in
remission as defined under 20 C.F.R. § 404.920(c), but that none of Plaintiff's severe
impairments, either alone or in combination met or equaled a listed impairment.  (R. 49-
50).  Plaintiff contests the ALJ's step two disability finding, specifically that that ALJ
improperly found Plaintiff's antiphospholipid syndrome and thoracic spine injury to be
non- severe. Plaintiff's Memorandum at 28-30.  Defendant maintains that Plaintiff's

antiphospholipid syndrome is not severe as it does not result in any limitations to Plaintiff's ability to function, and did not last for a period of at least 12 months. Defendant's Memorandum at 17-18.  Defendant further contends that Plaintiff's thoracic spinal injury is considered a severe impairment under the ALJ's more generalized impairment denoted as "back impairment," that Plaintiff's thoracic impairment failed to cause any limitations to Plaintiff's functioning, and that any error the ALJ committed during step two of the disability determination is harmless error, as the ALJ included consideration of Plaintiff's back impairment in the remaining steps of the sequential analysis.  Defendant's Memorandum at 18-19.

The ALJ's step two analysis is for nothing more than the screening out of *de minimis* claims. *See Dixon v. Shalala*, 54 F.3d 1019, 1025 (2d Cir. 1995).  Where an ALJ improperly lists a claimant's impairment during step two of the disability review analysis, and fails to provide extensive discussion to the impairment's functional limitations during the remaining steps of the process, remand is appropriate.  *Jelliffe v. Astrue,* 2012 WL 2047497, at *6 (D. Vermont March 7, 2012).  Such is not the case here.  As the ALJ provided extensive discussion on Plaintiff's back impairment and phospholipid syndrome.  (R. 53-62).  As such, Plaintiff's motion on this issue is without merit and should be DENIED.

## D.    Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough

to prevent the claimant from performing any gainful activity and the claimant is

considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d.

45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed

impairments, the claimant is considered disabled").  The relevant listings of impairments

in this case include 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.04 ("§ 12.04")

(Affective Disorders).  Plaintiff does not contest the ALJ's finding that Plaintiff does not

meet the criteria for disability under § 12.04, and the undersigned does not proceed to

review that portion of the disability determination.

**Right to Subpoena a Reporting Physician**

Plaintiff contends that the ALJ improperly denied Plaintiff's request to subpoena

Dr. Siaw.  Plaintiff's Memorandum at 27-28.  Defendant maintains that the ALJ provided

a proper explanation for declining Plaintiff's request to subpoena Dr. Siaw, as the record

included numerous reports from Dr. Siaw, and follow-up interrogatories to solicit clarified

responses.  Defendant's Memorandum at 29.

ALJ's must "seek additional information from [the treating physician] *sua sponte*,"

*Schaal v. Apfel*, 134 F.3e 496, 505 (2d Cir. 1998), and make "every reasonable effort" to

help the plaintiff get the required medical records.  *See* 20 C.F.R. § 404.1512(d).  "Every

reasonable effort" includes issuing subpoenas as authorized by 42 U.S.C. § 405(d).

The issuance of subpoenas in social security administrative hearings is governed by 20

C.F.R. § 404.950(d)(1) which provides:

> When it is reasonably necessary for the full presentation of a case, an
> administrative law judge or a member of the Appeals Council may . . . at the
> request of a party, issue subpoenas for the appearance and testimony of
> witnesses and for the production of books, records, correspondence, papers, or
> other documents that are material to an issue at a hearing.

20 C.F.R. § 404.950(d)(1) ("§ 404.950(d)(1)").

The Second Circuit affords ALJ's discretion to the issuance of subpoenas in the context of social security administrative hearings. *See Yancey v. Apfel,* 145 F.3d 106, 113 (2d Cir. 1998) (adopting rule from the Sixth Circuit). In instances where an ALJ appropriately compiles and considers all of the evidence in the record, determining that the record was adequate to afford a proper adjudication of the case, no subpoena is required. *Yancey*, 145 F.3d at 106. In this case, the ALJ satisfied that duty. Specifically, on April 25, 2011 (R. 371-78), the ALJ contacted Dr. Siaw to clarify the impairments that Dr. Siaw provided treatment for on behalf of Plaintiff. (R. 986). Upon listing Plaintiff's diagnoses, Dr. Siaw noted

> [Plaintiff] transferred to [Dr. Siaw's] clinic in February, 2009 with these problems already diagnosed by his previous PCP. I last saw [Plaintiff] in December 2009. I do not have a good recollection of the facts regarding him since I only saw him [three times].

(R. 986).

On June 6, 2011, the ALJ submitted medical interrogatories to Dr. Siaw, that Dr. Siaw completed and returned on July 19, 2011. (R. 1497-1500). The ALJ submitted additional interrogatories to Dr. Siaw on September 29, 2011, returned by Dr. Siaw October, 2011.

The ALJ also held the record open in the event that Plaintiff wished to contact Dr. Siaw or any other physicians for additional information. (R. 82). Moreover, the ALJ provided a comprehensive review of the record in the determination, including all of Plaintiff's visits to Dr. Siaw (R. 53, 54) and forms completed by Dr. Siaw (R. 56, 57, 58), and the medical interrogatories mailed to Dr. Siaw on June 6, 2011, and completed on July 19,

2011.  As the ALJ in this case fully and comprehensively developed the record with regard to Dr. Siaw, a subpoena from Dr. Siaw would serve no additional purpose.  As such, Plaintiff's motion on this issue is without merit and should be DENIED.

**Step Two - severe impairments**

Plaintiff contends the ALJ failed to consider Plaintiff's antiphospholipid syndrome and history of thoracic spine disc bulge in Plaintiff's RFC assessment.  Plaintiff's Memorandum at 29-30.  Defendant maintains that the ALJ properly considered Plaintiff's antiphospholipid syndrome non-severe, as Plaintiff did not have any symptoms related to the impairment during the relevant disability period.  Defendant's Memorandum at 17-18.  Defendant further maintains that the ALJ included Plaintiff's history of thoracic disc bulge in Plaintiff's back disorder (R. 49), that no evidence supports Plaintiff had a thoracic impairment during the relevant disability period, and that the ALJ's consideration of Plaintiff's back impairment throughout the remaining steps of the ALJ's disability analysis makes any error attributable to such oversight harmless.  Defendant's Memorandum at 18.  Plaintiff's contentions are without merit.

In order to be considered a "severe" impairment under step two of the disability analysis, an impairment must "significantly limit [a claimant's] physical or mental ability to do basic work activities," which are the abilities and aptitudes necessary to do most jobs such as:

1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
2) Capacities for seeing, hearing, and speaking;
3) Understanding, carrying out, and remembering simple instructions;
4) Use of judgment;
5) Responding appropriately to supervision, co-workers and usual work situations; and

      6) Dealing with changes in a routine work setting.

20 C.F.R. § § 404.1508, 416.908.

In this case, Plaintiff's antiphospholipid syndrome did not result in limitations to Plaintiff's ability to do basic work activities during the relevant disability period. In particular, Plaintiff's only pulmonary embolism in the record occurred on August 2008, nine months before Plaintiff's alleged onset date of disability on June 17, 2009. Moreover, on August 15, 2011, during a supplemental hearing, Dr. Montegut testified that there was no evidence of DVT or a pulmonary embolism since the time that Plaintiff was first diagnosed and treated for DVT on August 2008, that no evidence supported that Plaintiff had any limitations after the DVT, and that Plaintiff was able to engage in sedentary and light work. (R. 156). Accordingly, Plaintiff's contention that the ALJ failed to evaluate Plaintiff's DVT as a severe impairment is without merit.

Plaintiff's contention that Plaintiff's thoracic spine impairment is a severe impairment under step two of the disability review process is also without merit. No medical evidence in the record exists indicating that Plaintiff's thoracic spine impairment significantly limited Plaintiff's ability to do basic work activities, and Plaintiff received no treatment for his thoracic spine during the relevant disability period. As such Plaintiff's motion on this issue should be DENIED.

**Obesity**

Plaintiff contends that the ALJ failed to include Plaintiff's obesity in steps three, four, and five of the disability review. Plaintiff's Memorandum at 27. Defendant maintains that the ALJ included Plaintiff's obesity in the disability determination, as the ALJ adopted the opinion of Dr. Trimble on November 29, 2009 (R. 659), that included

19

Plaintiff's obesity in reviewing the record, specifically Dr. Dave's consultative examination of Plaintiff conducted on November 19, 2009. (R. 659). In this case, the ALJ included consideration of Plaintiff's obesity throughout the ALJ's disability determination (R. 52, 53, 55, 58), and Plaintiff's motion on this issue is without merit.

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in assigning more weight to the opinion of Dr. Trimble than the weight afforded to the opinion of Dr. Dale, and failed to consider the factors required under 20 C.F.R. § 416.927(c) ("§ 416.927(c)"). Plaintiff's Memorandum at 15. Defendant maintains that the ALJ correctly assigned less weight to the opinion of Dr. Dale, as Dr. Trimble's opinion was more consistent with the medical evidence in the record, and, the opinions of Dr. Dave (R. 636-37), and Dr. Montegut (R. 156, 143-47). Defendant's Memorandum at 25-27.

Under 20 C.F.R. § 416.927(c), the ALJ is required to consider the following factors in weighing medical opinions of treating and non-treating physicians, and provide reasons for the weight assigned to each medical opinion:

> (1) Examining relationship
> (2) Treatment relationship
> (3) Supportability
> (4) Consistency
> (5) Specialization
> (6) Other relevant factors

20 C.F.R. § 416.927(c).

In this case, the ALJ found that Dr. Dale's opinion that Plaintiff was unable to lift ten pounds or stand or walk for two hours or sit for six hours during an eight hour workday was inconsistent with Plaintiff's EMG test conducted on July 8 2009; that found

no medical basis for Plaintiff's radiculopathy. (R. 60). The ALJ further determined that Plaintiff experienced no recurring episodes of DVT for the period between January 2009 and June 2011 (R. 55), and that Dr. Dale's opinion of Plaintiff's mental state was inconsistent with Dr. Hill's psychiatric evaluation of Plaintiff on September 21, 2009, wherein Dr. Hill reported that Plaintiff exhibited normal gait and posture, and normal motor behavior. (R. 55-56). The ALJ distinguished Dr. Dale's opinion on Plaintiff's ability to work with the opinion of Dr. Dave, who, upon completing an internal medical examination of Plaintiff on September 21, 2009, noted that Plaintiff had no trouble walking or getting out of his chair, had a normal neurological examination, and opined that Plaintiff should avoid working around heavy, sharp or dangerous machinery, avoid heights and ladders, and had moderate to severe limitations to repetitive bending and twisting, and avoid prolonged walking, standing, lifting, carrying, pushing and pulling of more than moderately heavy objects, and had moderate limitations to repetitive squatting, kneeling, crouching, and prolonged sitting. (R. 55). The ALJ also provided reasoning for affording more weight to Dr. Trimble's opinion than the opinion of Dr. Siaw, Plaintiff's treating physician. (R. 59). As such, the ALJ provided sufficient reasoning for discounting the opinion of Dr. Dale in accordance with the factors set forth under § 416.927(c), and Plaintiff's motion on this issue is thus without merit.

**Medical evidence**

Plaintiff contends that the ALJ improperly substituted the ALJ's opinion for the opinion of Plaintiff's treating physician, Dr. Siaw. Plaintiff's Memorandum at 22-24. Specifically, Plaintiff contends that by finding Plaintiff's EMG study the only objective evidence to support Plaintiff's back and leg pain, the ALJ was required to request that

Dr. Siaw provide a medical opinion on Plaintiff's EMG report. Plaintiff's Memorandum at 22. Defendant maintains that the ALJ's adoption of Plaintiff's EMG test results is based on substantial evidence, as the interpreting neurologist, Dr. Wang, opined that the test results did not support Plaintiff's reports of pain. Defendant further maintains that the EMG results were supported by the opinion of Dr. Trimble, that Plaintiff did not receive any medical treatment for his back since the date of Plaintiff's car accident in 2006, and that Plaintiff failed to attend prescribed pain management treatment for his reported back pain. Defendant's Memorandum at 21-22. Plaintiff's contention is without merit.

An ALJ's determination will be reversed only where the opinion is not supported by substantial evidence or legal error exists. *See Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983). "The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Nix v.* Colvin, 2016 WL 3681463, at *6 (W.D.N.Y. July 6, 2013) (quoting *Jackson v. Astrue,* 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009)). In this case, Dr. Wang opined that Plaintiff's EMG test revealed no evidence of peripheral sensory neuropathy or acute lumbrosacral radiculopathy, and that Plaintiff should avoid taking unnecessarily prolonged narcotic pain medication as Plaintiff's EMG showed "no evidence of severe painful neuropathy." (R. 596). Such evidence supports the ALJ's determination that Plaintiff's EMG undermines Plaintiff's reports of severe pain. (R. 54). Moreover, upon answering interrogatories submitted by the ALJ, Dr. Siaw reported that his assessments of Plaintiff's limitations that result from pain were based entirely on Plaintiff's own statements. (R. 1497-1500). The ALJ therefore correctly assigned more weight to Dr.

22

Siaw's opinion supported by laboratory tests, and differentiated between portions of Dr. Siaw's reports based on medical tests and those supported only by Plaintiff's subjective reports.  *See Ford v. Astrue*, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010). Plaintiff's motion on this issue is without merit.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion (Doc. No. 12) should be GRANTED, Plaintiff's motion (Doc. No. 8) should be DENIED.  The Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        August 8, 2016
              Buffalo, New York

23

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        August 8, 2016
              Buffalo, New York

24